# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | |
|---|---|
| **COREY TARVIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:18-cv-00025** |
| ) | **Judge Campbell / Frensley** |
| **CHERRY LINDAMOOD, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon two Partial Motions to Dismiss: the first, a Partial

Motion to Dismiss filed by Defendants Matthew Corkum, Corrections Corporation of America

(now "CoreCivic"), Chris Jackson, and Shane McClain (hereinafter "the CoreCivic Defendants")

(Docket No. 53); and the second, a Partial Motion to Dismiss filed by the Tennessee Department

of Corrections (hereinafter "TDOC") (Docket No. 64). Both Motions are accompanied by

supporting Memoranda of Law. Docket Nos. 54, 65.

Plaintiff, who was initially pro se but who is now represented by counsel,[1] has filed a

combined Response to the instant Motions. Docket No. 67.

TDOC and the CoreCivic Defendants have filed Replies. Docket Nos. 68, 69.

Plaintiff filed his Verified First Amended Complaint in this action alleging that

---

[1] Plaintiff originally filed this action pro se with the assistance of his mother, who the
Court determined was not an attorney. *See* Docket Nos. 1, 3. Per the Court's instructions,
Plaintiff resubmitted the Complaint with his own signature. *See* Docket No. 9. When
conducting its frivolity review, the Court ordered that, due to his blindness, Plaintiff be appointed
counsel and given until April 26, 2019 to file an Amended Complaint. Docket Nos. 11, 12.

Defendants have violated his First, Eighth, and Fourteenth amendment rights pursuant to 42 U.S.C. § 1983, as well as his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Docket No. 32. Specifically, Plaintiff raises the following five causes of action: (1) Eighth Amendment failure to protect; (2) Eighth Amendment deliberate indifference to serious medical needs; (3) ADA Title II disability discrimination; (4) Rehabilitation Act disability discrimination; and (5) First and Fourteenth Amendment denial of access to courts. *Id.*

Plaintiff avers that he was savagely beaten by other prisoners while he was incarcerated at South Central Correctional Facility ("SCCF"), a facility operated by CoreCivic to house TDOC prisoners, and further avers that this beating occurred because individual Defendant Officers failed to protect him and because CoreCivic has a policy, practice, and custom of failing to appropriately supervise and train its employees. *Id.* Plaintiff additionally asserts that, as a legally blind prisoner who was held in segregation for 23 hours per day for nearly a year, Defendants have violated his constitutional right to access to the courts by failing to appropriately accommodate his medical condition (blindness), thereby preventing him from effectively grieving things at the facility and further preventing him from proceeding pro se thereby and necessitating his need to obtain counsel, by restricting his telephone calls, by interfering with his correspondence with and access to his counsel, and by forcing Plaintiff to break privilege in order to communicate information back to his counsel. *Id.* Plaintiff avers that the lack of disability accommodation and restriction of access to his counsel and the courts continues. *Id.*

Plaintiff sues Defendants in their individual and official capacities, seeking compensatory and punitive damages, declaratory and injunctive relief, attorneys' fees and costs, as well as any other relief the Court finds just and appropriate. *Id.* Plaintiff also requests that he receive all

accommodations to which he may be entitled. *Id.*

The CoreCivic Defendants filed the instant Motion and supporting Memorandum arguing that: (1) the Court should dismiss Plaintiff's claims against Defendant McClain as the Court has already found that Plaintiff failed to state a claim against him; (2) Plaintiff's claims related to the alleged October 2017 assault and Plaintiff's ADA claim fail to state a claim against CoreCivic; (3) Plaintiff's access to courts and retaliation claims fail to state a claim against all Defendants; and (4) to the extent that Plaintiff asserts claims against Defendants concerning events that occurred beyond a year prior to his filing the Amended Complaint, such claims would be time-barred. Docket Nos. 53, 54. With regard to Plaintiff's ADA claim, Defendant CoreCivic argues Plaintiff's ADA claim fails to state a claim upon which relief can be granted against it because Title I prohibits discrimination in employment; Title II prohibits discrimination in public services, programs, and activities; and Title III prohibits discrimination in public accommodations. Docket No. 54, p. 3. Defendant CoreCivic maintains that the law is well-settled that none of the three Titles apply to private prison corporations like CoreCivic. *Id.* at 3-6.

As to Plaintiff's claims against CoreCivic related to the October 2017 assault, Defendant CoreCivic argues that those claims are time-barred, because Plaintiff filed his original Complaint in this action on March 21, 2018 but did not name CoreCivic as a Defendant in that action. *Id.* at 6. Defendant CoreCivic argues that Plaintiff did not assert claims against it until the filing of the instant Amended Complaint on April 26, 2019, "well-beyond the one year statute of limitations." *Id.* at 6-7. Defendant CoreCivic contends that Sixth Circuit precedent "clearly holds that new parties may not be added after the statute of limitations has run," such that Plaintiff's claims against CoreCivic related to the October 2017 assault are time-barred. *Id.* Defendant CoreCivic

3

further argues that Plaintiff's Amended Complaint fails to plead sufficient facts to support *Monell* liability against CoreCivic for the October 2017 assault; Plaintiff's allegations that Defendant CoreCivic failed to train and supervise its officers fails to satisfy *Iqbal* and *Twombly's* pleading requirements; and Plaintiff's allegations "based upon information and belief" likewise fail to satisfy *Iqbal* and *Twombly*. *Id.* at 7-12.

Turning to Plaintiff's access to courts claim, the CoreCivic Defendants argue that this claim fails as a matter of law against all Defendants. *Id.* at 12. Specifically, the CoreCivic Defendants maintain that Plaintiff's access to the courts claim fails against them because Plaintiff does not allege that he suffered an actual injury and fails against Defendants Corkum and Jackson because Plaintiff has failed to allege their personal involvement. *Id.* at 12-14.

The CoreCivic Defendants also argue that, to the extent Plaintiff brings claims concerning CoreCivic's alleged failure to accommodate Plaintiff beyond a year prior to the filing of his amended complaint, such claims are time-barred. *Id.* at 14-15. As to Plaintiff's retaliation claim, the CoreCivic Defendants maintain that Plaintiff fails to allege the personal involvement of Defendants Corkum or Jackson and further fails to allege that any CoreCivic policy, practice, or custom led to the alleged retaliation, such that any retaliation claim against Defendants CoreCivic, Corkum, or Jackson must be dismissed. *Id.* at 15. Finally, the CoreCivic Defendants argue that Shane McClain must be dismissed as a Defendant because, after screening Plaintiff's original complaint, the Court dismissed Plaintiff's claims against Defendant McClain. *Id.* The CoreCivic Defendants note that, "[d]espite the claims being dismissed against Shane McClain, Plaintiff served McClain a copy of the lawsuit," and "[n]otably, in the Amended Complaint, Plaintiff brought no claims whatseoever against McClain"; they argue therefore that Shane

4

McClain must be dismissed as a Defendant from this action. *Id.*

Plaintiff, in his combined Response, argues that his failure to protect claim against CoreCivic is timely. Docket No. 67, pp. 6-12. Plaintiff responds that the Court found that Plaintiff plead viable failure to protect claims against the individual officers and specifically gave Plaintiff leave to amend to plead a failure to protect claim against CoreCivic, which Plaintiff timely did. *Id.* at 7. Plaintiff maintains that even if the Court had not explicitly given him leave to amend to plead a failure to protect claim against CoreCivic, such claim would relate back to Plaintiff's original complaint under Fed. R. Civ. P. 15(c), as Plaintiff originally sued the warden, chief of security, a medical officer, and correctional officers in their official capacities and they were all CoreCivic officers, CoreCivic was on notice of the claims. *Id.* at 8. Plaintiff additionally notes that he timely served the officials at the CoreCivic prison address and the officials filed appearances through the same attorney who has appeared on behalf of CoreCivic, thus reinforcing CoreCivic's notice that Plaintiff intended to bring a cause of action against it but for a pro se mistake concerning CoreCivic's identity as an appropriate Defendant. *Id.* at 9. Plaintiff additionally maintains that even if the Court had not granted him leave to amend and even if relation back did not apply, he is entitled to equitable tolling because he was not on either actual or constructive notice that CoreCivic was the appropriate Defendant when he originally filed his pro se action, particularly in light of his blindness, the fact that CoreCivic denied him the ability to read and write or conduct legal research at the prison library, and the fact that for the entirety of the limitations period, CoreCivic confined him to administrative segregation for 23 hours per day. *Id.* at 9-10. Plaintiff additionally argues that he has diligently pursued his rights and has complied with this Court's orders. *Id.* at 10. Plaintiff notes that he had no ability to file an

5

amendment through counsel before October 2018 because counsel had not been appointed yet. *Id.*

Plaintiff additionally responds that in his Verified First Amended Complaint he has alleged a plausible, viable failure to protect claim against CoreCivic because he has alleged that, as part of an official CoreCivic policy, custom, or practice, CoreCivic: failed to train and supervise their officers on how to handle incidents involving gang members, permitted undocumented or unscreened gang member cell assignments, and permitted officers to clear codes without conducting adequate investigations. *Id.* at 11-12.

Turning to his ADA claim against CoreCivic, Plaintiff responds:

> The TDOC and CoreCivic do not dispute that [Plaintiff] is disabled (due to his blindness) or that he has sufficiently pleaded the elements of an ADA claim. However, TDOC contends that a one-year statute of limitations limits [him] to relief only for the time frame April 2018 forward, while CoreCivic asserts that the ADA does not cover it all [*sic*].

*Id.* at 15.

Plaintiff argues that the ADA applies to CoreCivic because the ADA applies to a "public entity," which includes any "instrumentality of a State." *Id.* at 16, *citing* 42 U.S.C. § 12132. Plaintiff contends that CoreCivic is an instrumentality of the State when it operates a private prison; Plaintiff therefore maintains that the ADA applies to private prisons. *Id.*

With respect to his Rehabilitation Act claims, Plaintiff responds:

> TDOC and CoreCivic contend that, under Tennessee's one-year statute of limitations, Plaintiff's Rehabilitation Act claims should be limited to the time frame April 2018 forward. Both defendants appear to concede (at least at the pleading stage) that Plaintiff has articulated viable Rehabilitation Act claims as to conduct/injuries from April 2018 forward. As with the Title II ADA claim, there is

6

> no reason for this Court to go any further here because the claim is viable. And for the same reason discussed above, [Plaintiff] otherwise has a viable argument for equitable tolling that is fact-based and not appropriate for resolution at this early stage.

*Id.* at 17-18.

Turning to his denial of access to the courts claim, Plaintiff responds that he asserted this claim against the individual officers, TDOC, and CoreCivic. *Id.* at 18. Plaintiff does not oppose dismissal of this claim for Defendants Corkum, Simmons, and Jackson. *Id.* With regard to his claim against CoreCivic, Plaintiff contends that he has sufficiently plead both a backward-looking denial of access claim and a forward-looking denial of access claim. *Id.* at 18-20. Plaintiff specifically notes that he has alleged that CoreCivic's practices have obstructed and hindered his ability to pursue his legal claims and its actions have prevented him from effectively researching, grieving, and filing this lawsuit and continue to interfere with his ability to effectively communicate with his counsel. *Id.* Plaintiff maintains that, had CoreCivic not interfered with his access to the courts, access to the prison library, and the ability to read and write while incarcerated, he could have pleaded his claims against them earlier and could have sued for appropriate auxillary services and other accommodations earlier. *Id.* Plaintiff responds that CoreCivic continues to interfere with his access to the courts by impounding his legal mail, cancelling his initial appointment with counsel, denying him the ability to communicate with counsel, and surreptitiously snooping on attorney-client communications. *Id.*

In their Reply, citing case law from the Eleventh Circuit and the Middle District of Tennessee, the CoreCivic Defendants reiterate their contention that the ADA does not apply to privately run prisons. Docket No. 68, pp. 1-2. The CoreCivic Defendants argue, "Plaintiff has

provided no reasoning or legal basis that would support a decision finding that the ADA applies to CoreCivic. Accordingly, Plaintiff's ADA claims brought against CoreCivic must be dismissed." *Id.* at 3.

With regard to Plaintiff's Eighth Amendment claims, CoreCivic reiterates its contention that Plaintiff's failure to train or supervise allegations are insufficient to assert *Monell* liability and fall short of the requirements in *Iqbal* and *Twombly*. *Id.* The CoreCivic Defendants reply that a municipality's failure to train or supervise its employees must amount to deliberate indifference to the rights of the people with whom the untrained employees come into contact. *Id., citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). The CoreCivic Defendants argue that deliberate indifference can be shown only if the risk of a constitutional violation arising as a result of the inadequacies in the municipal training or supervision were "plainly obvious." *Id., citing Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). The CoreCivic Defendants argue that:

> In requiring this stringent standard, courts require plaintiffs to allege prior instances of unconstitutional conduct demonstrating that the defendant has ignored a history of abuse and was clearly on notice that the training or supervision "in this particular area" was deficient and likely to cause injury. *See, e.g., Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008); *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Okolo v. Metro. Gov't*, 892 F. Supp.2d 931, 943 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). Without pleading prior instances of unconstitutional conduct, a plaintiff fails to sufficiently allege *Monell* liability because he has failed to allege that the defendant was "clearly on notice" that its training and supervision was inadequate and thus, acted with the requisite "deliberate indifference."

*Id.* at 4.

8

The CoreCivic Defendants argue that Plaintiff's allegations, even if true, are insufficient to impose *Monell* liability because Plaintiff fails to allege any facts to plausibly conclude that CoreCivic knew "for a moral certainty" that its training and supervision were inadequate and because Plaintiff has failed to allege prior instances of unconstitutional conduct that would or should have placed CoreCivic on notice that its training and supervision were inadequate. *Id.* at 5. The CoreCivic Defendants assert that Plaintiff's articles have no bearing on whether he properly plead a viable *Monell* claim and should not be considered. *Id.*

The CoreCivic Defendants further reiterate their contention that Plaintiff has neither alleged sufficient facts to support his allegation that CoreCivic adopted a policy or custom of "refusing inmate auxillary aids and services," identified any written policy that directly caused the deprivation of his constitutional rights, nor alleged prior instances of unconstitutional conduct to plausibly conclude the existence of an unconstitutional custom. *Id.* at 6. The CoreCivic Defendants argue that "Plaintiff has made nothing more than unsupported, conclusory allegations against CoreCivic concerning CoreCivic's policies, customs, training, and supervision" such that they should be dismissed in their entirety. *Id.* at 7.

The CoreCivic Defendants additionally argue that Plaintiff's original complaint made no allegations that any Defendant failed to provide him medical care in violation of his Eighth Amendment rights, that any Defendant denied him accommodation for his disability in violation of the ADA or Rehabilitation Act, or that any defendant denied him access to the Courts in violation of his First and Fourteenth Amendment rights; they note that it was not until Plaintiff filed his Verified First Amended Complaint on April 26, 2019 that Plaintiff asserted these claims. *Id.* at 7. The CoreCivic Defendants reiterate their contention, therefore, that these claims

9

are time-barred as they were asserted outside the one-year statute of limitations applicable to Plaintiff's October 24, 2017 alleged assault.  *Id.*

With regard to Plaintiff's relation back and equitable tolling arguments, the CoreCivic Defendants argue that Plaintiff did not make a mistake concerning CoreCivic's identity in his original complaint such that the naming of CoreCivic as a Defendant in the Amended Complaint does not relate back, and further argues that the doctrine of equitable tolling is an extraordinary remedy that is applied sparingly and should not be applied herein.  *Id.* at 8-9. The CoreCivic Defendants reiterate their contention that these claims are therefore time-barred. *Id.* at 9.

The CoreCivic Defendants further argue:

> to the extent Plaintiff alleges claims against CoreCivic *not related to the* October 2017 assault, but nonetheless beyond a year prior to the filing of the Amended Complaint, such claims are likewise time-barred and must be dismissed.  Notably, Plaintiff's ADA, Rehabilitation Act, and Access to the Courts claims do not arise "out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading."  *See* Fed.R. Civ. P. 15(c). Thus, even if the Court finds that the claims against CoreCivic concerning the October 2017 assault do relate back to the original complaint, Plaintiff's ADA, Rehabilitation Act, and Access to Courts claims would not.

> . . . it has become unclear whether Plaintiff also attempts to bring claims concerning an alleged failure to provide him medical care *prior to or not related to* the October 2017 assault.  If that is the case, any such claim Plaintiff attempts to bring against CoreCivic or the individual defendants beyond one year prior to filing the amended complaint would likewise be barred by the statute of limitations on the grounds that such claims did not arise "out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading.

*Id.* at 9-10 (emphasis original).

Finally, the CoreCivic Defendants reiterate their contention that Plaintiff's Verified First

Amended Complaint does not state a viable access to courts claim because "Plaintiff's allegations amount to no more than a complaint that he was 'delayed' in filing his lawsuit," and because nowhere does Plaintiff allege "that he actually 'lost' a claim (and thus, suffered an 'actual injury') due to CoreCivic's alleged actions." *Id.* at 10-11 (citations omitted). With regard to Plaintiff's forward-looking access to courts claim, the CoreCivic Defendants reiterate their contention that no condition has stood in the way of Plaintiff and "the courthouse door" as evidenced by the fact that Plaintiff filed suit *before* counsel was appointed. *Id.* at 11-12. The CoreCivic Defendants argue that allegations of delay or inconvenience do not state a viable access to courts claim such that these claims should be dismissed. *Id.* at 12.

TDOC filed its instant Motion and supporting Memorandum arguing that: (1) this Court lacks subject-matter jurisdiction on Plaintiff's § 1983 claims against TDOC for money damages because TDOC has sovereign immunity on those claims; (2) Plaintiff's § 1983 claims fail to state a claim upon which relief can be granted against TDOC because TDOC is not a person subject to liability under § 1983; and (3) Plaintiff's ADA and Rehabilitation Act claims that accrued prior to April 26, 2018 are time-barred. Docket Nos. 64, 65.

Plaintiff, in his combined Response, clarifies that he seeks only equitable relief, *not* monetary damages, from TDOC regarding his constitutional claims. Docket No. 67. Plaintiff responds, therefore, that should TDOC not be a person under §1983 for purposes of equitable relief, Plaintiff requests the opportunity to substitute an "appropriate official in an official capacity." *Id.* at 13-14. As to his ADA claim against TDOC, Plaintiff notes that TDOC does not dispute that Plaintiff can seek relief under the ADA, but rather, simply seeks to limit Plaintiff's relief to April 2018 and forward. *Id.* at 15. As to TDOC's argument that the time period for

which Plaintiff can seek recovery should be limited to April 2018 and forward, Plaintiff

responds:

> Given [TDOC's] concession, there is no need for this Court to address whether the statute of limitations cuts off Plaintiff's damages or renders certain prior conduct irrelevant. That is not an appropriate use of a motion to dismiss – and it is premature. The Court should evaluate the nature and extent of [Plaintiff's] damages on a developed record, not the pleadings. If those damages are subject to a cutoff point – whether that is April 2019 (when he filed the Amended Complaint), March 2018 (when he filed his original complaint), or some earlier point cannot fairly be addressed without discovery and development of the record.

> Even if the Court were to consider this issue now, Plaintiff submits that the doctrine of equitable tolling applies . . . [because] TDOC and CoreCivic confined [Plaintiff] in administrative segregation for a year following the incident, denied him the ability to read and write, and denied him meaningful access to the outside world. It would be perverse for the TDOC and CoreCivic to benefit from that misconduct by cutting off [Plaintiff] from recovering damages. Moreover, [Plaintiff] would at least be entitled to tolling for the period between the Court's August 28, 2018 order directing an appointment and the April 26, 2019 deadline to file an amended complaint. It would be unfair to cut off [Plaintiff's] damages because he followed this Court's Orders and awaited an appointment over which he had no control.

*Id.* at 15-16 (footnotes omitted).

For the same reasons Plaintiff argues his ADA claims should continue at this juncture

without being limited in duration, Plaintiff also argues that his Rehabilitation Act claim should

likewise not be limited in duration at this point in the litigation. *Id.* at 17-18.

TDOC, in its Reply, contends that Plaintiff's citation to *Dodson v. Lindamood* as support

for allowing the designation of a proper party for injunctive relief purposes is distinguishable

from the instant action because, with TDOC as a named Defendant in Plaintiff's First Amended

Complaint, there is no other "most appropriate official-capacity [d]efendant" in this case. Docket No. 68. TDOC argues, therefore, that Plaintiff's request for leave to substitute TDOC for an appropriate official as to his § 1983 claim for injunctive relief should be denied. *Id.* at 2. As to Plaintiff's argument that TDOC's Partial Motion to Dismiss is not an appropriate vehicle for the Court to limit the scope of damages or relevant conduct at issue, TDOC replies that it's Motion to limit Plaintiff's ADA and Rehabilitation Act claims based on the statute of limitations is appropriate because it is not seeking to dismiss any damages, but rather, is simply seeking to dismiss any alleged conduct that does not fall within the one-year statute of limitations. *Id.* at 2-3. TDOC argues, therefore, that it's Motion should be granted on this point and any ADA or Rehabilitation claims that fall outside of the one-year statute of limitations should be dismissed. *Id.*

As to Plaintiff's equitable tolling argument, TDOC replies that equitable tolling is "sparingly bestowed" and should not apply to Plaintiff's failure to name TDOC as a Defendant until April 26, 2019. *Id.* at 3. TDOC notes that despite Plaintiff having been incarcerated since 2007, he failed to name TDOC as a Defendant in his original complaint. *Id.* TDOC argues that "Plaintiff has clearly been on notice for at least six years, if not the duration of his incarceration, that TDOC, the entity that oversees his incarceration, would be a properly named party for any claim involving a failure to accommodate his legal blindness." *Id.* TDOC continues, "to the extent this Court finds that equitable tolling should apply as to Plaintiff's ADA and Rehabilitation Act claims against TDOC during the time appointment of counsel for Plaintiff was pending, tolling should strictly be limited by that time period. This Court directed the Clerk of Court to appoint counsel for Plaintiff on September 5, 2018. ECF 12, at Page ID #108. Tricia

13

Herzfeld was appointed as counsel for Plaintiff on February 14, 2019. ECF 26. Therefore, to the extent this Court finds that equitable tolling applies, it should be limited to five months and nine days to encompass the date this Court directed that appointment be made until the date Ms. Herzfeld was appointed as Plaintiff's counsel." *Id.* at 4.

As has been discussed, Plaintiff's Verified First Amended Complaint raises five causes of action and sues numerous Defendants in their individual and official capacities. *See* Docket No. 32. Not all claims and issues are presently before the Court. At issue in the instant Partial Motions to Dismiss are the following: (1) Plaintiff's Eighth Amendment failure to protect claim against CoreCivic; (2) Plaintiff's ADA Title II claim against CoreCivic; (3) Plaintiff's Eighth Amendment deliberate indifference claim against TDOC; and (4) Plaintiff's First and Fourteenth Amendment denial of access to the courts claim against CoreCivic, TDOC, and Defendants Corkum, Jackson, and Simmons. TDOC and CoreCivic also seek to limit the time period for Plaintiff's Rehabilitation Act claim against them and Plaintiff's ADA Title II disability discrimination claim against TDOC to relief from April 2018 forward.

For the reasons set forth below, the undersigned recommends that the CoreCivic Defendants' Partial Motion to Dismiss (Docket No. 53) be GRANTED IN PART AND DENIED IN PART, and that TDOC's Partial Motion to Dismiss (Docket No. 64) likewise be GRANTED IN PART AND DENIED IN PART.

## II. Law and Analysis

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a

complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

15

**B. 42 U.S.C. § 1983**

**1. Generally**

Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights

pursuant to 42 U.S.C. § 1983. Docket No. 32. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48 (1988) (*citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other

grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436

U.S. 149, 155 (1978)). The traditional definition of acting under color of state law requires that

the defendant in a § 1983 action have exercised power "possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49,

108 S. Ct. 2255 (*quoting United States v. Classic,* 313 U.S. 299, 326 (1941)).

**2. First Amendment**

**a. Generally**

The First Amendment provides that:

> Congress shall make no law respecting an establishment of
> religion, or prohibiting the free exercise thereof; or abridging the

freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

### b. Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts grounded in the First Amendment's protection of the right "to petition the Government for a redress of grievances." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*quoting* U.S. Const. amend. I). This does not give prisoners a generalized "right to litigate," but does allow for the pursuit of direct appeals, habeas corpus applications, and civil rights claims. *Id*. (*construing Lewis v. Casey*, 518 U.S. 343, 355 (1996)).

In order to possess standing when a plaintiff asserts that his/her access to the courts has been denied, he/she must demonstrate actual injury. *See, e.g., Allen v. Wright,* 468 U.S. 737, 750-52 (1984).

### c. Retaliation

The Sixth Circuit, in *Thaddeus-X v. Blatter*, *supra*, held that a plaintiff must establish three elements to make out a *prima facie* claim of retaliation under the First Amendment:

> (1) [T]he plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct;[2] and
>
> (3) there is a causal connection between elements one and two –

---

[2] In the prison context, the Sixth Circuit has adopted the standard that an adverse action "is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F. 3d at 396 (*quoting Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

17

that is, the adverse action was motivated at least in part by the
plaintiff's protected conduct.

*Id.* at 394. S*ee also, Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *Lewis v. ACB Bus. Serv.,*

*Inc.*, 135 F.3d 389, 406 (6th Cir. 1998); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th

Cir. 1997); and *Yellow Freight Sys.*, *Inc. v. Reich*, 27 F.3d 1133, 1138 (6th Cir. 1994).

### 3. Eighth Amendment

#### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel

and unusual punishments" forbids punishments that are incompatible with "the evolving

standards of decency that mark the progress of a maturing society," or which "involve the

unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)

(citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for

the deprivation must have exhibited deliberate indifference to the inmate's health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)*.*

#### b. Failure to Protect

In order to establish a constitutional violation based on failure to protect, a prison inmate

first must show that the failure to protect from risk of harm is objectively "sufficiently serious."

Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). A plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* A plaintiff must also establish the subjective element; namely, that prison officials acted with "deliberate indifference" to inmate health or safety. *Id.* at 834. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837. The Supreme Court has held that:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* at 842. However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it. *See id.* at 842-43.

### c. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation

of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id.* (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)

20

(citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)).

### 4. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### 5. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity

which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. Additionally, where an entity is named as a defendant, an official capacity claim against its individual employees is redundant, and those claims should be dismissed. *Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp*., 522 F. App'x 322, 327 (6th Cir. 2013).

### a. CoreCivic

CoreCivic is a private corporation that contracts with the State to operate the penal facilities. A private entity that contracts with the State to perform a traditional state function, such as operating a penal facility, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CoreCivic is amenable to suit under § 1983.

As discussed above, the law is well-settled that respondeat superior does not provide a basis for liability under § 1983. *See Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978); *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). In order for CoreCivic to be held liable, therefore, a plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989). *See also, Monell*, 436 U.S. at 690-91 (In order to find a governmental entity

22

liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).  In other words, a plaintiff must show that some official policy, practice, or custom was the moving force behind the alleged constitutional deprivation.  *See Monell*, 436 U.S. at 691; *Miller*, 408 F.3d at 813.

Additionally, CoreCivic cannot be held liable for the actions or inactions of its supervisory officials simply as their employer unless a plaintiff can show that the supervisor either encouraged the specific incident of misconduct or had some direct, personal involvement in the alleged constitutional deprivation.  *See, e.g., Knott*, 481 F.3d at 574; *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

### b.  TDOC

The Tennessee Department of Correction is an agency of the State of Tennessee.  The law is well-settled that a state is not a "person" within the meaning of  § 1983.  *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Clark v. Kentucky*,  229 F.Supp.2d 718, 722 (E.D. Ky. 2002).

### C.  42 U.S.C. § 12101 *et seq.*

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Public entity" includes any state or local

23

government and any department, agency, special purpose district, or other instrumentality of a state or local government. 42 U.S.C. § 12131.

Title II of the ADA applies to prisoners housed in state prisons. *Maher v. Tenn.*, 2018 WL 1404405 at * 4 (W.D. Tenn. March 20, 2018).[3]  Insofar as Title II creates a private cause of action for damages against the States for conduct violative of the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.  *United States v. Georgia*, 546 U.S. 151, 159 (2006).  *See also, Tennessee v. Lane*, 541 U.S.509 (2004).

## D.  29 U.S.C. § 794

Applicable to both public entities and private organizations, the Rehabilitation Act provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); *see also* 29 U.S.C. §§ 794(b)(1)(A) and (3)(A).

The Regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients.  *See* 28 CFR § 42.503.  A recipient of Federal funds may not discriminate on the basis of handicap: it may not deny an otherwise qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance,

---

[3] Although CoreCivic contracts with the State of Tennessee to provide governmental prison services, that does not convert CoreCivic into a "public entity" for purposes of Title II; CoreCivic, as a private prison, is not subject to Title II of the ADA. 42 U.S.C. § 12181(7); *Dodson v. CoreCivic,*2018 WL4800836, at * 7 (M.D. Tenn. Oct. 3, 2018);  *Anderson v. South Central Correctional Facility*, 2015 WL 5794524 at * 4 (M.D. Tenn. Oct. 1, 2015); *Logan v. Corrections Corp. of America*, 2012 WL 2160276 at * 6 (M.D. Tenn. June 12, 2012).

deny an otherwise qualified handicapped person equal opportunity to achieve the same benefits that others achieve in the program or activity receiving Federal financial assistance, intimidate or retaliate against any individual (whether handicapped or not) for the purpose of interfering with any right secured by the Rehabilitation Act or applicable regulations, utilize criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, or defeat or substantially impair accomplishment of the objections of the recipient's program or activity with respect to handicapped persons. *Id.* Additionally, a recipient that employees at least fifteen people "shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving federal financial assistance. Such auxiliary aids may include brailled and taped material, qualified interpreters, readers, and telephonic devices." 28 C.F.R. § 42.503(f).

## E.  The Case at Bar

As an initial matter, Plaintiff's claims against Defendant McClain should be dismissed because the Court has already found that Plaintiff original Complaint failed to state a claim against him, Plaintiff's Verified First Amended Complaint contains no allegations against him, and Plaintiff's Response does not contain any objection to Defendant's requested dismissal of the claims against him.

Turning to the remainder of the Motions now before the Court, as noted, at issue in the instant Partial Motions to Dismiss are the following: (1) Plaintiff's Eighth Amendment failure to protect claim against CoreCivic; (2) Plaintiff's ADA Title II claim against CoreCivic;

(3) Plaintiff's Eighth Amendment deliberate indifference claim against TDOC; and (4) Plaintiff's First and Fourteenth Amendment denial of access to the courts claim against CoreCivic, TDOC, and Defendants Corkum, Jackson, and Simmons.  TDOC and CoreCivic also seek to limit the time period for Plaintiff's Rehabilitation Act claim against them and Plaintiff's ADA Title II disability discrimination claim against TDOC to relief from April 2018 forward.  The undersigned will address each in turn.

Addressing first Plaintiff's Eighth Amendment failure to protect claim against CoreCivic, taking the allegations of Plaintiff's Verified First Amended Complaint as true, the undersigned finds that Plaintiff's allegations that CoreCivic officers knew that STG inmates were threatening Plaintiff but failed to investigate or resolve the threat and instead transferred Plaintiff to another prison block where more STG inmates were housed; that CoreCivic officers thereafter witnessed Plaintiff be threatened with physical violence but cleared the incident without investigation and without implementing protective measures; and that Plaintiff was thereafter repeatedly stabbed, kicked, and punched, resulting in serious injuries that required emergency surgery and hospitalization, are sufficient to survive the instant Motion to Dismiss.  Further taking the allegations of Plaintiff's Verified First Amended Complaint as true, the officers' failure to protect Plaintiff was caused by CoreCivic's policy, practice, or custom of failing to train and supervise its officers on how to handle incidents involving STG members, permitted undocumented or unscreened STG member cell assignments, and code clearing without conducting an adequate investigation.  Accordingly, the undersigned recommends that CoreCivic's Motion be denied in this regard and that these claims be permitted to proceed at this juncture.

With regard to Plaintiff's ADA Title II claim against CoreCivic, although Plaintiff argues

that CoreCivic *should* be subject to suit under Title II of the ADA, this Court has held that although CoreCivic contracts with the State of Tennessee to provide governmental prison services, that does not convert CoreCivic into a "public entity" for purposes of Title II; CoreCivic, as a private prison, is not subject to Title II of the ADA. 42 U.S.C. § 12181(7); *Dodson,* 2018 WL4800836, at * 7 (M.D. Tenn. Oct. 3, 2018); *Anderson*, 2015 WL 5794524 at * 4 (M.D. Tenn. Oct. 1, 2015); *Logan*, 2012 WL 2160276 at * 6 (M.D. Tenn. June 12, 2012). This Court has already declined to depart from the majority view unless and until the Sixth Circuit holds otherwise. *Dodson,* 2018 WL4800836, at * 7 (M.D. Tenn. Oct. 3, 2018). Because the Sixth Circuit has not yet held otherwise, the undersigned recommends that this aspect of CoreCivic's Motion be granted and that Plaintiff's Title II ADA claims against CoreCivic be dismissed.

Turning next to Plaintiff's Eighth Amendment deliberate indifference claim against TDOC seeking equitable relief, TDOC is an agency of the State of Tennessee. The law is well-settled that a state is not a "person" within the meaning of § 1983. *See, e.g., Will*, 491 U.S. at 71; *Clark*, 229 F.Supp.2d at 722. Accordingly, Plaintiff cannot sustain this claim and his Eighth Amendment deliberate indifference claim against TDOC should be dismissed. As to Plaintiff's request to substitute an "appropriate official in an official capacity" in TDOC's place, there is no such person who is not already a Defendant in this action, as, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents," and where an entity is named as a defendant, an official capacity claim against its individual employees is redundant, and those claims should be dismissed. *See, e.g., Graham*, 473 U.S. at 165; *Claybrook*, 199 F.3d at 355 n.4; *Foster*, 573 Fed. Appx. at 390; *Faith Baptist Church*, 522 F. App'x at 327; *Frost*, 851 F.2d at

827. Additionally, Plaintiff has properly sued CoreCivic and the individual Defendants alleging his Eighth Amendment deliberate indifference claim; those Defendants do not seek dismissal of that claim and that claim continues.

As an initial matter regarding Plaintiff's First and Fourteenth Amendment access to the courts claim, Plaintiff does not oppose dismissal of Count V as to Defendants Corkum, Simmons, and Jackson. Accordingly, CoreCivic's Motion should be granted on this point and Count V of Plaintiff's Verified First Amended Complaint should be dismissed against Defendants Corkum, Simmons, and Jackson. Additionally, as discussed above, the law is well-settled that a state is not a "person" within the meaning of § 1983, such that Plaintiff cannot sustain his First and Fourteenth Amendment claims against TDOC; those claims should therefore be dismissed. Also for the reasons discussed above, Plaintiff's request for "leave to substitute an appropriate official to ensure complete declaratory and injunctive relief on this claim" should be denied.

As to CoreCivic's argument that the filing of Plaintiff's Complaint establishes that it did not interfere with or deny Plaintiff access to the courts, such that this claim should be dismissed, the undersigned notes that the initial Complaint in this matter was filed by Plaintiff's mother, and that, because of Plaintiff's blindness and his segregation in solitary confinement for 23 hours per day, this Court appointed Plaintiff counsel to assist him. Plaintiff's counsel has reported numerous CoreCivic impediments to and improprieties with her ability to communicate with Plaintiff, which she asserts remain ongoing. With regard to the allegations in Plaintiff's Verified First Amended Complaint, Plaintiff has specifically raised numerous allegations of a myriad of ways in which CoreCivic has interfered with and denied him access to the courts and the ability to communicate effectively with his appointed counsel. Plaintiff's allegations, taken as true, are more than

28

sufficient to survive CoreCivic's Partial Motion to Dismiss. Plaintiff's First and Fourteenth Amendment claims against CoreCivic should proceed.

Finally, with regard to Plaintiff's Rehabilitation Act claim against CoreCivic and TDOC and his ADA Title II claim against TDOC, Defendants do not seek dismissal of those claims, but rather, seek to limit Plaintiff's relief on those claims to April 2018 and forward. Taking the allegations of Plaintiff's Verified First Amended Complaint as true, and considering the procedural history in this action, including the appointment of counsel and the allegations by counsel of improprieties with access to her client, the undersigned finds that it is inappropriate to temporally limit Plaintiff's potential relief period at this juncture. Accordingly, the undersigned recommends that these aspects of the instant Motions be denied and that Plaintiff's Rehabilitation Act claim against CoreCivic and TDOC and his ADA Title II claim against TDOC proceed.

### IV. Conclusion

For the reasons discussed above, the undersigned recommends that the CoreCivic Defendants' Partial Motion to Dismiss (Docket No. 53) be GRANTED IN PART AND DENIED IN PART as set forth herein. The undersigned further recommends that TDOC's Partial Motion to Dismiss (Docket No. 64) likewise be GRANTED IN PART AND DENIED IN PART as set forth herein.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said

objections. Failure to file specific objections within fourteen (14) days of service of this Report

and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111

(1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFERY S. FRENSLEY
United States Magistrate Judge