# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| COREY TARVIN,<br>    Plaintiff,<br><br>    v.<br><br>CORRECTIONS CORPORATION<br>OF AMERICA d/b/a CORECIVIC,<br>et al.,<br>    Defendants. | Case No. 1: 18-cv-00025<br>District Judge Richardson<br>Magistrate Judge Frensley |

## REPORT AND RECOMMENDATION

This pro se 42 U.S.C. § 1983 action is before the Court on defendants CoreCivic, Matthew Corkum, and Chris Jackson's motion for partial judgment on the pleadings and other matters. Docket No. 237. Plaintiff opposes the motion and defendants have replied. Docket Nos. 241, 242. After reviewing the record and the briefs, the undersigned recommends that Defendants' motion be **GRANTED IN PART** and **DENIED IN PART.**

## I.     BACKGROUND

Plaintiff Corey Tarvin is a Tennessee inmate who is legally blind due to macular degeneration. Plaintiff filed this action in May 2018, following events that occurred on October 23, 2017, and thereafter while Plaintiff was housed at South Central Correctional Facility (SCCF), a prison operated by CoreCivic that houses prisoners in the custody of the Tennessee Department of Corrections (TDOC). Plaintiff names as defendants CoreCivic, Corrections Officers Matthew Corkum, Chris Jackson, unnamed Simmons, John Does #1 and #2, and Shawn Phillips, Warden of Bledsoe County Correctional Complex where Plaintiff is currently housed.

Plaintiff alleges the following in his Third Amended Complaint (TAC). Docket No. 224. On October 23, 2017, while housed in the Apollo-B pod at SCCF, Corkum was called to the pod

to "resolve a potential physical encounter" between Plaintiff and his cellmate, who was a member of a Security Threat Group (STG) whose members were targeting Plaintiff. Id. at p. 6.

Later that day, Corkum returned to the Apollo-B pod to move Plaintiff to the Gemini-A pod. Id. Plaintiff alleges Corkum and CoreCivic failed to take reasonable measures to ensure that he would be protected from harm once he was moved to the new pod. Specifically, Plaintiff asserts they failed to alert Shane McClain, Chief of Security, and Sgt. Inman that other STG members posed a serious threat to his safety. Id. He asserts that because of Corkum and CoreCivic's failure to implement measures to protect him, he was left unprotected against further assault by STG members, and that the next day, the morning of October 24, 2017, "rival STG members threatened him with physical violence." Id. at p. 7.

Plaintiff alleges Officer McCoy witnessed the threats to Plaintiff and immediately contacted other officers for backup. Id. Officers Jackson, Simmons, John Doe #1, and John Doe #2 responded to McCoy's request for assistance but left the Gemini-A pod without conducting an adequate investigation and after observing the situation for only a few minutes. Id. He alleges Jackson, Simmons, the other officers, and CoreCivic left Plaintiff unprotected against the STG members. He alleges the other officers had by that time observed STG members threaten him with physical harm over a two-day period in two separate pods. Id. After the officers left the Gemini-A pod, multiple STG members began assaulting him by stabbing, kicking, and punching him. Id. Plaintiff sustained multiple stab wounds and damage to his eye socket which required emergency surgery and other treatment. Id.

Plaintiff alleges that Corkum knew or should have known that the other prisoner, his cellmate, posed a risk to his safety but failed to conduct an adequate investigation of the initial incident or resolve the serious threat that it posed to him. Plaintiff alleges Corkum instead merely

spoke with a member of the rival STG while investigating the "potential physical encounter" and left the pod. Id. Plaintiff alleges the failures occurred despite video footage of the incident showing the threats of violence against him. Id. He alleges Corkum "failed to fully investigate the incident or to resolve the serious threat it posed to [him.]" Id. He alleges Corkum knew or should have known that other prisoners posed a risk to his safety. Id.

Plaintiff asserts Corkum and Jackson were deliberately indifferent to his blindness, a serious medical need. Id. Plaintiff alleges Corkum and Jackson "knew he faced a substantial risk of serious injury from other inmates and that he was particularly at risk due to his blindness, leaving him vulnerable and at risk of being unable to defend himself against imminent harm." Id. Plaintiff asserts defendants were deliberately indifferent to his need for services because of his blindness. He asserts these defendants know Plaintiff is blind, yet they have not provided him any services to allow to him communicate in writing*."* Id.

Plaintiff asserts five counts in his TAC.[1] In Count I, Plaintiff asserts Corkum, Jackson, Simmons, and the John Does failed to protect him in violation of his Eighth Amendment Rights. Docket No. 224, pp. 16-17. In Count II, he asserts CoreCivic and the individual defendants were deliberately indifferent to his serious medical needs, his blindness, in violation of his Eighth and Fourteenth Amendment rights. Id., at pp. 19-20. In Count III, Plaintiff asserts CoreCivic and the TDOC have, by reason of his disability, excluded him from participation in and/or denied him the benefits of the services, programs, or activities of these public entities, and have subjected him to discrimination in violation of the American with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq*.

---

[1] Plaintiff has been represented by court-appointed counsel throughout periods of this litigation, including the drafting and filing of the TAC, as well as the defense of the instant motion. On August 13, 2024, the court granted counsel's motion to withdraw, (Docket No. 250), and Plaintiff is currently proceeding pro se.

Id., at pp. 19-23. In Count IV, he asserts CoreCivic and the TDOC discriminated against him based on his disability in violation of the Rehabilitation Act. Id. at pp. 23-25. In Count V, Plaintiff asserts CoreCivic and Phillips denied him access to the Courts by interfering with his Court mail and retaliating against him, in violation of his First and Fourteenth Amendment rights. Id. at pp. 25-27. He asserts allegations against TDOC outlining its current violations of his rights. Plaintiff seeks, inter alia, damages and injunctive and declaratory relief. Id., at pp. 27-28.

This motion followed. Defendants argue the following claims should be dismissed: (1) Plaintiff's failure to protect claim against Corkum (Count I); (2) Plaintiff's deliberate-indifference-to-medical-needs claim; (Count II); (3) Plaintiff's Rehabilitation Act claim against CoreCivic (Count IV); (4) Plaintiff's First Amendment retaliation claim against CoreCivic; (5) Plaintiff's Fourteenth Amendment claims; (6) all claims against the "John Doe" defendants and Officer Simmons; and (7) Plaintiff's request for injunctive relief.

## II. LAW AND ANALYSIS

A defendant may move for judgment on the pleadings after filing its answer, but "early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is assessed under the same standards as a motion to dismiss under Rule 12(b)(6). *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009) (citation omitted).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court construes the record in the light most favorable to the non-moving party and accepts all well-pleaded factual allegations as true. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). While a complaint will survive a motion to dismiss if it contains "either direct or inferential allegations respecting all material elements" necessary for recovery under a viable legal theory, this Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal

conclusions masquerading as factual allegations will not suffice." Id. at 275-76 (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions...." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).

1. **John Doe Defendants and Officer Simmons**

As an initial matter, Plaintiff does not oppose dismissal of his claims against the John Doe defendants on the grounds that the statute of limitations has expired and against Officer Simmons for failure to serve pursuant to Federal Rule 4(m). Docket No. 241, at p. 1. Accordingly, the undersigned recommends defendants' motion dismiss claims against the John Doe defendants and Officer Simons be granted and the claims against them be dismissed.

2. **Failure-to-Protect Claim**

In Count I, Plaintiff asserts Corkum and Jackson failed to protect him in violation of his Eighth Amendment Rights. Docket No. 224, at pp. 16-17.

To find a prison official liable for a failure-to-protect claim under the Eighth Amendment, two requirements must be met. First, the plaintiff must demonstrate that his mistreatment was objectively "sufficiently serious." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the plaintiff must establish that the prison official acted with deliberate indifference to the inmate's safety. Id. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial

5

risk of harm exists, and he must also draw the inference." *Id.* at 837. The Supreme Court has stated:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* at 842. However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it.

*See id.* at 842-43.

Defendants argue Plaintiff fails to plead facts sufficient to meet the objective prong for a failure-to-protect claim. They contend Plaintiff fails to assert any factual basis establishing there was an excessive risk to his safety before the alleged incident, beyond the inherent dangers of prison confinement. They argue that although Plaintiff alleges that he was in danger of being assaulted by unidentified STG members after Corkum transferred him to another pod, he does not allege any facts supporting that such a risk existed. They contend that Plaintiff only alleges that he had a near-physical altercation with his cellmate prior to being reassigned to another pod and that Plaintiff's allegations of a "potential physical encounter" with a cellmate do not satisfy the objective component. They argue it is unclear from Plaintiff's complaint how this near altercation caused an excessive risk of harm to Plaintiff from other STG members, particularly when Plaintiff was transferred from the pod after the alleged potential physical encounter.

Defendants further argue Plaintiff fails to plead facts sufficient to meet the subjective prong of a failure to protect claim against Corkum. They note that while Plaintiff alleges that Corkum "knew or should have known" that unidentified STG members "posed a risk to [his] safety," Docket No. 224, at p. 6, he offers no facts to support this legal conclusion. They argue Plaintiff's alleged concern over danger from unidentified STG members is too general to state a failure-to-protect claim. They note Plaintiff does not allege that he or anyone else ever informed Corkum of

danger from STG members or that Plaintiff ever complained about his safety at all. They contend that without such allegations, Plaintiff has failed to raise his claim for relief beyond the speculative level as required.

Plaintiff argues the Court has already concluded that his failure to protect claim "passed muster" under Rule 12(b)(6) following initial PLRA screening, and therefore it should proceed under the law of the case doctrine. He argues that even if the Court declines to apply the law of the case, his TAC pleads sufficient facts to support a failure-to-protect claim.

An initial PLRA screening does not bar a subsequent motion under Federal Rule 12. The dismissal of a complaint in its entirety under the PLRA constitutes a final judgment on the merits for preclusion purposes. *See, e.g., Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002). However, in this Circuit, an initial screening order that permits claims to proceed is not a final judgment on the merits; it is an interlocutory ruling subject to revision at any time prior to entry of final judgment. *See, e.g., In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("[d]istrict Courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.").

As Courts have recognized, the PLRA "does not obligate the Court to screen for every possible defect in a complaint, nor is the screening process infallible." *Steinmetz v. Annucci*, No. 17-CV-01000-LJV-JJM, 2018 WL 4765128, at *2 (W.D.N.Y. June 28, 2018), report and recommendation adopted, 2018 WL 4762254 (W.D.N.Y. Oct. 2, 2018). Neither the Federal Rules of Civil Procedure nor the PLRA bar defendants from thereafter filing--or the Court from granting--a motion to dismiss. *Steinmetz*, 2018 WL 4765128, at *2; *see also, Burfitt v. Bear,* No. 1:15-cv-730, 2016 WL 4992017, at *2 (S.D. Ohio Aug. 15, 2016), report and recommendation adopted, 2016 WL 4944773 (S.D. Ohio Sept. 16, 2016) (a prisoner complaint that survives an initial PLRA

screening is not precluded from subsequent dismissal under Rule 12(b)(6) or § 1915(e)(2). Therefore, neither the Court's initial screening order nor the PLRA bars consideration of the instant motion.

As to the merits, Plaintiff has failed to plead facts sufficient to meet the objective prong of a failure-to-protect claim. "To establish a constitutional violation based on failure to protect, a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. The risk to inmate health or safety must be "excessive." *Id.* 511 U.S. at 837. The objective prong "requires a Court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Even where a serious injury occurs, the objective prong of a failure-to-protect claim requires analysis of the risk to the injured party *before* the alleged injury occurred. The analysis must consider the likelihood of harm to the injured party in the context of the circumstances that led to the injury. *See Reedy v. West*, 988 F.3d 907, 909, 912-14 (6th Cir. 2021)(granting summary judgment to defendant); *see also Schack v. City of Taylor*, 177 F. App'x 469, 472 (6th Cir. 2006). In other words, a failure-to-protect claimant cannot state an objectively excessive risk of harm by merely alleging facts of physical harm that occurred *following* the violation. *Caraway v. CoreCivic of Tenn., LLC, et al.*, 98 F.4th 679, 685 (6th Cir. 2024)(emphasis added). Even where a serious injury occurs, the objective prong of a failure-to-protect claim requires an analysis of the risk to the injured party *before* the alleged injury occurred." *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 469 (6th Cir. 2022) (emphasis added). The relevant constitutional "injury" is the exposure to an objectively excessive risk, "not any physical harm that befalls the inmate because of that risk." *Caraway*, 98 F.4th at 685. It is not enough to simply state that the causation

8

requirement is satisfied; that legal conclusion must be supported by '[s]ome factual basis' showing a causal link.'" *Id.*, 98 F.4th at 686.

Here, in his TAC, Plaintiff fails to assert any factual basis establishing that there was an excessive risk to his safety *before* the October 23, 2017, incident beyond the typical inherent dangers of prison confinement. Moreover, while Plaintiff alleges that he was in danger of being assaulted by unidentified STG members after Corkum transferred him to another pod, he does not allege any facts supporting that such a risk existed. Plaintiff merely alleges that he had a near-physical altercation with his cellmate *prior* to being transferred to another pod. Docket No. 224, at p. 6. However, allegations of a "potential physical encounter" with a cellmate do not satisfy the objective component of a claim. *See e.g., Reedy v. West*, 988 F.3d 907, 909, 912-14 (6th Cir. 2021) (holding that although the plaintiff had suffered a "brutal assault" at the hands of his cellmate, the objective prong was not met because general disagreements between the cellmates before the incident did not present a substantial risk of harm). And it is unclear from the TAC how the near altercation with this cellmate caused an excessive risk of harm to Plaintiff from other STG members, particularly when plaintiff was removed from the pod after the complained of "potential physical encounter." Accordingly, the undersigned concludes Plaintiff fails to meet the objective component for his failure-to-protect claim.

Plaintiff fails to satisfy the subjective prong, too. Although Plaintiff alleges that Corkum "knew or should have known" that unidentified STG members "posed a risk to Plaintiff's safety," Docket No. 224, at p. 6, he pleads no facts to support this conclusion. Plaintiff's alleged general concerns over danger from unidentified STG members are too attenuated to establish "deliberate indifference" for a failure-to-protect claim. *Cf., Reedy v. West*, 988 F.3d 907, 909, 912-14 (6th Cir. 2021); *Dugas v. Wittrup*, 2015 U.S. Dist. LEXIS 11899 (S.D. Ohio Feb. 2, 2015). Because

Plaintiff alleges only a generalized fear of STG members and fails to plead any facts reflecting that Corkum was subjectively aware of an excessive risk of harm after he transferred Plaintiff to another pod, he fails to meet the subjective prong for such a claim against Corkum.

Moreover, to the extent Plaintiff alleges that Corkum's investigation following the potential physical encounter with his cellmate was inadequate, such an allegation amounts to only a potential negligence claim and does not support a deliberate indifference claim. *Farmer*, 511 U.S. at 835 (a plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety"); *Beard v. Hamilton Cnty. Sheriff's Dep't.*, 2022 U.S. Dist. LEXIS 97654, at *6 (E.D. Tenn. June 1, 2022) (officer's negligence or dereliction of duty cannot provide the basis for a failure-to-protect claim). Indeed, Plaintiff's allegations relating to the investigation conducted by Corkum tend to demonstrate that Corkum was not deliberately indifferent. Rather, based on Plaintiff's allegations, Corkum's conduct in investigating the potential danger from Plaintiff's cellmate and transferring Plaintiff to another pod to separate Plaintiff and his cellmate, support the inference that Corkum was not deliberately indifferent to Plaintiff's health or safety. Again, as a result, Plaintiff cannot establish the subjective component of his failure to protect claim. Plaintiff's failure-to-protect claim fails as a matter of law.

### 3. Deliberate-Indifference-to-Medical-Needs Claim Against all Defendants

In Count II, Plaintiff asserts CoreCivic and the individual defendants were deliberately indifferent to his serious medical needs, his blindness, in violation of his Eighth and Fourteenth Amendment rights. Docket No. 224, at pp. 18-19. Plaintiff asserts that despite knowledge of his blindness, Defendants left him vulnerable and unable to defend himself. Id. at p. 18. He alleges Defendants did not allow him to communicate in writing, and placed him in isolation 23 hours per day, constituting deliberate indifference towards his serious medical needs. Id.

The State has a constitutional obligation under the Eighth Amendment to provide adequate medical care to those whom it has incarcerated. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Id. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. For instance, the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. Id. at 105-06 (citations omitted). A deliberate indifference to medical needs claim must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

To satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). As for the subjective element, "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (citing *Westlake v. Lucas*, 537 F. 2d 857, 860 n.3 (6th Cir. 1976)). Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate

indifference. *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). The inquiry, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (citing *Farmer*, 511 U.S. 825 at 837, 844.

Plaintiff's allegations against Corkum and Jackson relate to their alleged failure to protect him from other inmates despite his blindness and do not concern whether they failed to provide medical care. Plaintiff makes no allegations that Corkum or Jackson denied him access to medical care by prison doctors and medical staff or interfered with that care. Plaintiff only alleges that due to a lack of accommodations for his blindness, he could not effectively communicate in writing.[2] Docket No. 224. He does not allege a failure to provide medical care that otherwise concerns the Eighth Amendment. *Cf. Nali v. Mich. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 45450, at *20-21 (W.D. Mich. Apr. 27, 2011) (failure to provide handicap accommodations in bathroom did not implicate Eighth Amendment. *See also Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement.").

Even assuming Plaintiff's allegations were properly classified as Eighth Amendment deliberate indifference to medical needs claims, Plaintiff does not allege that Jackson or Corkum were personally involved in either denying Plaintiff the ability to write or were responsible for placing him in isolation. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999) (to state a cognizable § 1983 claim, plaintiff must allege some personal involvement by each of the named defendants); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (personal involvement by the defendant is an essential element in a § 1983 cause

---

[2] The Court previously dismissed Plaintiff's ADA claim. Docket No. 78, at p. 7.

of action asserting a constitutional deprivation). Because Plaintiff does not plead any allegations that support Jackson or Corkum's personal involvement in the alleged denials, Plaintiff's deliberate-indifference-to-medical-needs claim against the individual defendants should be dismissed.

Plaintiff also fails to state a claim for deliberate indifference to medical needs claim against CoreCivic. Plaintiff alleges that CoreCivic has a policy or custom of "failing to provide appropriate auxiliary aids and services, and failing to provide comparable access to services, benefits, activities, programs, or privileges to blind inmates." Docket No. 224, at p. 19. The undersigned disagrees.

A governmental entity cannot be found liable due to an employee's or agents' actions under a respondeat superior analysis. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 694 (1978). Instead, a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Id. Accordingly, to prevail on a § 1983 claim against a governmental entity, a plaintiff must show that a policy or well-settled custom of the entity was the "moving force" behind the alleged deprivation of his or her rights. *Miller v. Sanilac Cnty*, 606 F.3d 240, 254-55 (6th Cir. 2010).

To satisfy Monell's requirements, a plaintiff must "identify the policy, connect the policy to the municipality itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). This is essentially a causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury. *Id*. at 363-64.

Plaintiff fails to do so here. Plaintiff fails to plead facts to show that CoreCivic adopted a policy or custom of denying aids and services to blind inmates. He pleads no facts to support that

13

a policy denying aids and services to blind inmates existed. He also offers no prior instances of blind inmates being denied aids and services. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (per *Iqbal* and *Twombly,* the failure to point to a pattern of a custom or prior unconstitutional conduct subjects a complaint to dismissal.) Because Plaintiff has failed to state a plausible claim that CoreCivic had an unconstitutional policy or custom of denying aids and/or services to blind inmates, this claim should be dismissed.

### 4. Rehabilitation Act Claim Against CoreCivic and the TDOC

In Count IV, Plaintiff asserts CoreCivic and the TDOC discriminated against him based on his disability in violation of the Rehabilitation Act. Id*.* at pp. 23-25.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, protects an "individual with handicaps" who is "otherwise qualified" from being excluded from participation in a federally assisted program "solely" based on his or her handicap. Courts have recognized that to provide access to a program or activity, the Rehabilitation Act requires "reasonable accommodations" to be made for an individual with a disability. *Alexander v. Choate,* 469 U.S. 287, 301 (1985). To state a prima facie claim under the Rehabilitation Act, a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; (3) he was excluded from the benefit due to discrimination based upon disability; and (4) the program or activity from which he is excluded receives federal financial assistance. *Doe v. Salvation Army*, 531 F.3d 355, 358 (6th Cir. 2008). The plaintiff must also show bad faith or gross misjudgment to make a successful Section 504 violation claim. *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982). Examples of successful Section 504 claims include a blanket districtwide policy that shortened the school day for autistic children, *Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1211-12 (9th Cir. 2004); a school district's refusal to place a student with

fibromyalgia in an honors class or permit her to obtain school credit by way of home instruction, *Weixel v. Bd. of Educ.,* 287 F.3d 138, 148 (2d Cir. 2002); and a request for monetary damages for physical abuse and injury that a special education student suffered while at school, *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271,1276 (9th Cir. 1999).

Plaintiff alleges that "CoreCivic and the TDOC receive Federal financial assistance within the meaning of 29 U.S.C. § 794(a). The operations of Defendants are "programs or activities" within the meaning of 29 U.S.C. §794(b)." Docket No. 224, at p. 23. Defendant argues plaintiff's threadbare allegations are insufficient to establish that it receives "federal financial assistance" for purposes of the Rehabilitation Act. The Court agrees.

Courts have held that CoreCivic is not subject to the Rehabilitation Act. *See Lee v. Corr. Corp. of Am.*, 61 F. Supp. 3d 139 (D.D.C. Aug. 1, 2014). In *Lee,* Plaintiff argued Corrections Corp. of America, CCA, (now CoreCivic) received federal funding through its contracts with the BOP and U.S. Marshals Service. Id. The Court held that such contracts did not constitute "federal financial assistance" under the Act. *Id*. The Court stated, "[c]ourts define 'Federal financial assistance' to mean the 'government's provision of a subsidy to an entity' and the 'plaintiff d[id] not allege that defendant receive[d] subsidies from the federal government . . .'" *Id*. As a result, the Court dismissed the plaintiff's Rehabilitation Act claim. Id. Since *Lee*, Courts have ruled likewise on the same reasoning and dismissed Rehabilitation Act claims against CoreCivic and other private prison facilities at the motion to dismiss stage. *See also, Estate of Mejia v. Archambeault*, 2021 U.S. Dist. LEXIS 184638 (S.D. Cal. Sept. 27, 2021) (plaintiff's allegation that CoreCivic was a program that received federal financial assistance as defined in 29 U.S.C. § 794(b) amounted to a bare recitation of the fourth element and did not raise an inference that CoreCivic receives a subsidy); *Goodman v. Robert A. Deyton Det. Facility*, 2015 U.S. Dist. LEXIS

123145 (N.D. Ga. Sept. 14, 2015) (although defendant receives federal funding through its contracts with the BOP and U.S. Marshals Service, it does not receive "Federal financial assistance" within the meaning of the Rehabilitation Act; Courts interpreting § 504 of the Rehabilitation Act have consistently construed "Federal financial assistance" to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided.)

Plaintiff's bare allegation is insufficient to establish that CoreCivic receives "federal financial assistance" for purposes of the Rehabilitation Act, and therefore Plaintiff's Rehabilitation Act claim against CoreCivic should be dismissed.

### 5. First Amendment Retaliation Claim Against CoreCivic and Phillips

In Count V, Plaintiff asserts CoreCivic and Phillips denied him access to the Courts by interfering with his Court mail and retaliating against him, in violation of the First and Fourteenth Amendment. Id. at pp. 25-27

To establish a prima facie case for First Amendment retaliation, a plaintiff must show: (1) that he engaged in constitutionally protected speech or conduct; (2) that the defendant took adverse action against him "that would deter a person of ordinary firmness from engaging in that conduct"; and (3) that the protected conduct caused the adverse action, at least in part. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Nonetheless, [i]f the plaintiff establishes a prima facie case, "the defendants can avoid liability by showing that [they] would have taken the same action even in the absence of the protected conduct." *Wenk v. O'Reilly,* 783 F.3d 585, 593 (6th Cir 2015)(cleaned up). Like any alleged constitutional violation by a government entity, Plaintiff must prove an unconstitutional policy or custom was the moving force behind a constitutional deprivation. *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658 694 (1978).

In support of dismissal, CoreCivic argues Plaintiff does not allege any policy or custom of retaliation and fails to plead sufficient facts to establish a retaliation claim. CoreCivic argues that while Plaintiff concludes that several actions were taken in retaliation for him filing a lawsuit, such allegations constitute legal conclusions that the Court need not accept as true. CoreCivic contends Plaintiff fails to allege how filing his lawsuit led to specific acts of retaliation.

Plaintiff counters that the facts alleged in his TAC and the reasonable inferences that can be drawn therefrom sufficiently state a First Amendment retaliation claim. Plaintiff alleges that after filing his initial Complaint, on at least five separate occasions, prison officials working on behalf of CoreCivic retaliated against him for filing his lawsuit and for successfully obtaining Court-appointed counsel. Docket No. 224, pp. 25-27. Specifically, Plaintiff states that in connection with the appointment of counsel, CoreCivic hindered his communication with counsel, retaliated against him by impounding his mail, tampering with his mail by falsely stamping it as "inmate refused," and eavesdropping on privileged communications with counsel. Id. He alleges these actions occurred only after he exercised his First Amendment right to pursue legal claims. Id. He alleges "these actions taken to hinder and obstruct Plaintiff's access to the Courts are part of a policy, custom, or practice of CoreCivic and the TDOC." Id., He argues that "the sheer number" of these instances, as well as the context and timelines surrounding them, easily give rise to a reasonable inference that they were part of a policy, practice, or custom to gain strategic advantage and retaliate against him. Id.

The undersigned agrees. Plaintiff alleges five instances of alleged retaliation. These instances are sufficient to establishing the kind of pervasive custom that might give rise to liability under *Monell.* Although this Court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident--or even three

17

incidents--do not suffice. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir.2010) (citing *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir.2002) and *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir.1988)). As the Court is aware, it must accept as true all well-pled facts and draw all reasonable inferences in favor of the plaintiff. *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). Plaintiff's TAC asserts facts that support the inference that there was a causal connection between Plaintiff engaging in protected conduct and the adverse actions that were taken against him. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). For these reasons, the Court will deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim.

### 6. Plaintiff's Request for Injunctive Relief

Finally, CoreCivic argues that because Plaintiff is no longer housed at a Core Civic facility, his request for injunctive relief against CoreCivic should be dismissed as moot. Plaintiff counters that his complaints are not moot because they are not only capable of repetition but can also be reasonably be expected to return. Plaintiff notes he is serving a life sentence, and that during his 18 years of incarceration he has been transferred seven different times, resulting in three different housing situations at three different CoreCivic facilities. He argues it is reasonable to infer that over the remainder of his sentence he will again be housed at a CoreCivic facility.

The undersigned agrees that Plaintiff's request for injunctive relief is not moot. CoreCivic has not met its "formidable" or "heavy" burden of establishing "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" or that the challenged conduct has been unambiguously terminated. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000) (to moot a case, the defendant has the heavy burden to show the allegedly wrongful behavior could not reasonably expected to return). It is true that Plaintiff has now been moved to a non-CoreCivic facility. However, given the facts of this case, CoreCivic has

18

Case 1:18-cv-00025 Document 270 Filed 12/20/24 Page 18 of 20 PageID #: 1850

not met its initial burden to show Plaintiff will not be returned to a CoreCivic facility in the future. Defendant's motion on this issue should be denied.

### III. CONCLUSION

In conclusion, the undersigned recommends defendants' unopposed motion to dismiss the claims against the John Doe defendants and Officer Simons be granted and the claims against them be dismissed. The undersigned recommends Plaintiff's failure to protect claim against Corkum and Jackson be dismissed. Count II, Plaintiff's claim for deliberate indifference to medical needs against CoreCivic and the individual defendants should be dismissed. Counts III and IV, Plaintiff's claims pursuant to the Americans with Disabilities Act (ADA) and the Rehabilitation Act should be dismissed. Plaintiff's First Amendment retaliation claim against CoreCivic and Phillips (Count V) remains pending.

Consistent with the above, the undersigned recommends that Defendants' motion for partial judgment on the pleadings (Docket No. 177) be **GRANTED IN PART** and **DENIED in part**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

19

Case 1:18-cv-00025   Document 270   Filed 12/20/24   Page 19 of 20 PageID #: 1851

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**